2026-1333

# United States Court of Appeals for the Federal Circuit

## IN RE ABLYNX N.V., SANOFI,

*Appellants*

*Appeal from the U.S. Patent and Trademark Office,*
*Patent Trial and Appeal Board, No. 2026-000193*

## AMICUS CURIAE BRIEF OF ROBERT A. ARMITAGE IN SUPPORT OF NEITHER PARTY

ROBERT A. ARMITAGE
*AMICUS CURIAE*
320 Seaview Court #1811
Marco Island, FL 34145
(703) 801-6334
raarmitage@aol.com

# United States Court of Appeals
# for the Federal Circuit

*In re Ablynx N.V., Sanofi 2026-1333*

## CERTIFICATE OF INTEREST

Amicus Curiae Robert A. Armitage certifies the following:

1. **Represented Entities**.  The name of every party or amicus represented by me is:  None.

2. **Real Party in Interest**.  The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:
    Not applicable.

3. **Parent Corporations and Stockholders**.  All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:
    Not applicable.

4. **Legal Representatives**. List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).
    Not applicable.

5. **Related Cases**. Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).
    See Appellants' Main Brief at p. viii.

Date: April 25, 2026                     /s/Robert A. Armitage
                                         Robert A. Armitage

i

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ......................................................... i

TABLE OF AUTHORITIES................................................................iii

INTEREST OF AMICUS.................................................................. 1

RULE 29(a)(2) AND 29(4)(E) STATEMENTS .................................. 1

INTRODUCTION ........................................................................... 2

ARGUMENT................................................................................... 9

    A. ODP Should Be Confined To Separate Patents For Which The Statutory Nonobviousness Requirement Is Inapplicable And, Therefore, Cannot Assure Patentable Distinctness. ...................................................... 10

    B. ODP Consequences Should Be Confined To Imposing Limits On Infringement Remedies, Such That The Doctrine Does Not Address Patentability Or Require USPTO Examination For Patentability............................. 12

    C. For Patents Without A Statutory "Prior Art" Relationship, ODP Should Exist If Any Claimed Invention From Either Patent Is Patentably Indistinct From Any Claimed Invention Of The Other Patent. .......... 14

    D. The Possibility For Harassment Of Accused Infringers In Cases of ODP Should Be Addressed By Applying *Res Judicata* Principles, As Though The Claims Of Both Patents Had Issued In A Single Patent....................... 16

    E. ODP Infringement Remedy Limitations Should Reflect The Potential For A Single URAA Patent To Secure A "Right To Exclude" Period Of Up To 20 Years, As Well As Congress' Explicit Justification For PTE. .................................................................. 18

CONCLUSION ......................................................................... 29

# TABLE OF AUTHORITIES

## Cases

*Allergan USA, Inc. v. MSN Lab'ys Priv. Ltd.*, 111 F.4th 1358, 1370 (Fed. Cir. 2024) ................................................................ 4, 22, 25

*Eldred v. Ashcroft*, 537 US 186, 205 (2003) ................................... 26, 27, 28

*Eli Lilly and Co. v. Barr Laboratories, Inc.*, 251 F. 3d 955 (Fed. Cir. 2001) ................................................................................. 4, 12

*Gilead Scis., Inc. v. Natco Pharma Ltd.*, 753 F.3d 1208 (Fed. Cir. 2014) ........................................................................................ 4

*In re Bass*, 474 F.2d 1276 (C.C.P.A. 1973) .................................................. 11

*In re Berg*, 140 F.3d 1428 (Fed. Cir. 1998) ................................................. 15

*In re Braat*, 937 F.2d 589, 592 (Fed. Cir 1991) ........................................... 15

*In re Cellect, LLC, 81 F.4th 1216 (Fed. Cir. 2023)* ........................... 5, 24, 25

*In re Griswold*, 365 F.2d 834 (C.C.P.A. 1966) ........................................... 17

*In re Hubbell*, 709 F.3d 1140 (Fed. Cir. 2013) .............................................. 4

*In re PersonalWeb Technologies*, 961 F.3d 1365 (Fed. Cir. 2020) .............. 17

*In re Schneller*, 397 F.2d 350 (CCPA 1968) ..................................... 5, 23, 25

*Kessler v. Eldred,* 206 U.S. 285 (1907) ....................................................... 17

*Newell Cos. v. Kenney Mfg. Co.*, 864 F.2d 757 (Fed. Cir. 1988) ................... 2

*Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276 (Fed. Cir. 2011) (en banc) .............................................................................. 3

## U.S. Constitution

U.S. Const. art. I, § 8, cl. 8 ........................................................................... 18

**Statutes**

35 U.S.C. § 100(j) .................................................................................. 10

35 U.S.C. § 102 ...................................................................................... 14

35 U.S.C. § 102(a)(2) ............................................................................ 21

35 U.S.C. § 102(b) ........................................................................... 20, 21

35 U.S.C. § 102(b)(2) ............................................................................ 14

35 U.S.C. § 102(c) ................................................................................. 14

35 U.S.C. § 103 .............................................................................. 10, 11

35 U.S.C. § 119 ...................................................................................... 21

35 U.S.C. § 119(e) .......................................................................... 20, 22

35 U.S.C. § 120 ...................................................................................... 20

35 U.S.C. § 154 ............................................................................... 26, 27

35 U.S.C. § 154 (1952) (amended 1994) ................................................ 18

35 U.S.C. § 154(a)(1) ............................................................................ 26

35 U.S.C. § 154(a)(2) ...................................................................... 20, 27

35 U.S.C. § 154(b) ..................................................................... 20, 23, 28

35 U.S.C. § 154(c) ................................................................................. 27

35 U.S.C. § 156 ...................................................................................... 23

Act of Mar. 2, 1861, ch. 88, § 16, 12 Stat. 246 .................................... 18

American Inventors Protection Act of 1999, Pub. L. No. 106-113, 113
    Stat. 1501A-552 (1999) .................................................................. 23

Cooperative Research and Technology Enhancement (CREATE) Act
    of 2004, Pub. L. No. 108-453, 118 Stat. 3596 (2004) ........ 7, 11, 16, 18

Drug Price Competition and Patent Term Restoration Act of 1984, Pub. L. No. 98-417, 98 Stat. 1585 (1984) .................................... 23, 28

Leahy-Smith America Invents Act, Pub. L. No. 112-29, 125 Stat. 284 (2011).......................................................................... 11, 16, 22

Patent Act of 1952, Pub. L. No. 82-593, 66 Stat. 792 (1952) ...................... 10

Patent Law Amendments Act of 1984, Pub. L. No. 98-622, 98 Stat. 3383 (1984).............................................................................. 11

Uruguay Round Agreements Act of 1994, Pub. L. No. 103–465, § 101, 108 Stat. 4809 ................................................................. passim

## Other Authorities

130 Cong. Rec. 28,071 (Oct. 1, 1984)........................................................ 11

150 Cong. Rec. S7520-22 (Nov. 20, 2004) (Statement of Senator Orrin Hatch).................................................................... 11, 16

Double Patenting Notice at 834 O.G. 1615, January 9, 1967 ...................... 10

Robert A. Armitage, *Understanding the America Invents Act and Its Implications for Patenting*, 40 AIPLA Q.J. 1, 86 (2012).................... 21

## INTEREST OF AMICUS

Amicus is a patent practitioner who believes that a full restatement of obviousness-type double patenting (ODP) law is needed to redress the growing complexity of the law, as well as reflect the impact of statutory changes affecting the doctrine's longstanding policy justifications.

## RULE 29(a)(2) AND 29(a)(4)(E) STATEMENTS

Amicus Curiae Robert A. Armitage states the following:

1. No counsel for a party authored this brief in whole or in part.

2. No party or its counsel made a monetary contribution intended to fund the preparation or submission of this brief.

3. No other person made a monetary contribution intended to fund the preparation or submission of this brief.

4. Appellants consent to, and the Director of the USPTO does not oppose, the filing of this brief.

1

## **INTRODUCTION**

In this brief, in addressing the issue raised by Appellants,[1] Amicus is asking that this Court give consideration to undertaking something no individual panel of this Court is permitted to do under this Court's rules, that is, to overrule prior holdings of the Court.[2]  As such, at its core, this brief is requesting the Court consider whether a decision in this appeal, in the first instance, should be rendered *en banc*.

Second, Amicus is asking this Court to consider whether the issue raised by Appellants in this appeal should be addressed as part of a holistic restatement of the law on obviousness-type double patenting.  Unlike an issue of statutory law, where the Court consistently confines its holding to the statutory issues raised on appeal, ODP law is—in its entirety—a

---

[1] "Did the Board err in holding that a later-expiring patent with a later patent term filing date may serve as an ODP reference against a pending application, where the patent and application share no common priority date and the patent claims are undisputedly nonobvious and could not have been presented in the application?"  Appellants' Opening Brief at p.3.

[2] *Newell Cos. v. Kenney Mfg. Co.*, 864 F.2d 757, 765 (Fed. Cir. 1988).  "This court has adopted the rule that prior decisions of a panel of the court are binding precedent on subsequent panels unless and until overturned *in banc*."

judicially imposed, non-statutory, policy driven doctrine of a type that may periodically benefit from a restatement of the doctrine, particularly as individual panel decisions of this Court have impacted the scope, reach, and effects of the doctrine.[3] Amicus requests this Court to assess whether the complexity of the analysis needed to fully address the issue raised by Appellants is evidence of the benefits that a comprehensive, ground-up, restatement of the whole of this judge-made law might offer.

Appellants raise the issue of whether the ODP doctrine is properly applied to a fact situation where the claimed inventions of one of the patents involved in ODP would represent prior art to the claimed inventions of the other patent involved in the ODP. As set out in Appellants' statement of the issue: ODP is alleged to arise with respect to "*patent claims [that] are undisputedly nonobvious*" with respect to "prior art" application claims rejected on ODP grounds. [Emphasis added.]

Historically, one "bright line" application of ODP law was its limitation that patents having a prior art relationship to one another were

---

[3] Precedent for such a holistic, *en banc* consideration of a non-statutory doctrine exists in this Court's holdings in *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276 (Fed. Cir. 2011) (en banc), addressing the doctrine of misconduct-based permanent patent unenforceability.

never regarded as subject to the ODP limitations on enforceability.  For this Court to return to this historic containment of the doctrine, it appears that prior, inconsistent precedents of this Court may need to be distinguished, if not overruled.[4]

The "prior art relationship" issue is not the only aspect of contemporary ODP law where this Court's current jurisprudence has caused the law to disconnect from what were historically "bright line" distinctions between when ODP might possibly exist and when the possibility for ODP was precluded.  For example, in recent years, this Court has ended practices that had long precluded application of ODP consequences where the claims of a later issued patent were patentably distinct from the claims of an earlier-issued patent—by applying the doctrine to a pair of patents when such distinctness was present.[5]

---

[4] See *In re Fallaux*, 564 F.3d 1313 (Fed. Cir. 2009), citing to *Eli Lilly and Co. v. Barr Laboratories, Inc.*, 251 F. 3d 955 (Fed. Cir. 2001) and compare *In re Hubbell*, 709 F.3d 1140 (Fed. Cir. 2013).

[5] See *Gilead Scis., Inc. v. Natco Pharma Ltd.*, 753 F.3d 1208, 1217 (Fed. Cir. 2014).  "We therefore hold that an earlier-expiring patent can qualify as an obviousness-type double patenting reference for a later-expiring patent under the circumstances here."  Precedents, such as *Gilead*, have triggered the need to further explain, and, on occasion, distinguish such holdings, but not overrule them.  See *Allergan USA, Inc. v. MSN Lab'ys Priv. Ltd.*, 111 F.4th 1358, 1370 (Fed. Cir. 2024), noting this Court's

4

Other holdings of this Court appear to find ODP to exist based entirely on relative patent expiration dates, seemingly without the historical constraint on ODP that addressed only whether a *later-issued* patent contained patentably indistinct claims with respect to an *earlier-issued* patent.[6] These aspects of the Court's incrementally developed jurisprudence suggest that a holistic restatement of the doctrine could be timely.

The same type of issues affect the law on ODP consequences, specifically whether—and to what extent—an "unjustified timewise extension of the right to exclude" exists.[7] This aspect of ODP law was initially developed based on an 1861 statute prescribing a measurement for

---

"holding in *Gilead* appears to apply here… . But the court in *Gilead* ... focused its inquiry only on whether issuance dates should remain the most relevant benchmark for evaluating [ODP] post-URAA. … It did not address the role of filing dates. And most importantly, our holding in *Gilead* ... was expressly limited to the 'circumstances of [that] case'… ."

[6] *In re Cellect*, LLC, 81 F.4th 1216, 1226 (Fed. Cir. 2023). "First, we note that an ODP determination depends on an assessment of obviousness, i.e., whether the claims of a later-expiring patent would have been obvious over the claims of an earlier-expiring patent owned by the same party."

[7] *In re Schneller*, 397 F.2d 350, 354 (CCPA 1968). "The fundamental reason for the [ODP] rule is *to prevent unjustified timewise extension of the right to exclude* granted by a patent no matter how the extension is brought about."

5

the "right to exclude" that, as of 1994, no longer exists.[8]  As described herein, this Court could address *en banc* whether its ODP jurisprudence demonstrates judicial deference to what the contemporary patent statute has justified as the "right to exclude."

To this end, Amicus asks that this Court decide the issue raised by Appellants in this appeal by sequentially addressing the following questions:

1. Should the ODP doctrine (and ODP consequences) be applied only to patents for which the statutory nonobviousness requirement cannot operate to limit claims of the respective patents to patentably distinct claimed inventions?  Specifically, should ODP consequences apply to a pair of patents only if, for at least one claim from each of the involved patents, neither such claimed invention represents statutory prior art to the other?

2. For a pair of patents involved in ODP, should the sole policy-driven consequences be limitations on available infringement remedies? Should ODP be recast as a judicially imposed doctrine dictating only

---

[8] See the Uruguay Round Agreements Act of 1994, Pub. L. No. 103–465, § 101, 108 Stat. 4809.

limitations on infringement remedies, in which no policy need or justification exists for treating ODP as an issue of patentability or patent validity—or for the United States Patent and Trademark Office to examine pending patent applications for the existence (upon patent issuance) of ODP?

3.  If ODP applicability is limited to a pair of patents without a prior art relationship, should the standard for determining whether any two patents constitute ODP reduce to whether at least one claimed invention of either patent is patentably indistinct from a claimed invention of the other patent, *with the respective filing, issue, or expiration dates of the involved patents otherwise being of no relevance to whether or not ODP is present*?

4.  In accounting for the possibility for harassment of accused infringers arising through ODP for separately owned CREATE Act[9] patents that could be separately enforced, as well as commonly owned patents that might be serially enforced, should the ODP doctrine's "possible harassment" policy be exclusively addressed by applying *res judicata*

---

[9] Cooperative Research and Technology Enhancement (CREATE) Act of 2004, Pub. L. No. 108-453, 118 Stat. 3596 (2004).

principles in the enforcement of the patents involved in ODP, by treating the involved patents as though all the claims of both patents had been issued in a single patent? *If so, should application of such res judicata principles obviate the need for any disclaimer of alienation or separate enforcement of either involved patent*?

5. Because Congress, through the URAA, increased the permitted period for the "right to exclude" under any single patent from 17 years (*measured from the patent issue date to the patent expiration date*) to a period of up to 20 years, should any *unjustified timewise extension of the right to exclude* under ODP policy be found to exist only to the extent that the *period from the issue date of the earlier-issued patent to the expiration date of the later-expiring patent exceeds 20 years*? Additionally, because Congress provided for patent term extension (PTE) that could extend the "right to exclude" beyond the URAA's statutory limitation of up to 20 years, in determining any unjustified timewise extension of exclusive rights in cases of ODP, should PTE be disregarded in the calculation of this 20-year issue-to-expiration period? Should the "unjustified extension" policy under ODP be administered *by denying any infringement remedies beyond this*

8

*justified period, and thereby obviating any need for a disclaimer of term of the later-expiring patent?*

## ARGUMENT

Over decades, what was once a tiny acorn of judge-made ODP law has now become a gnarly oak of Federal Circuit precedents. The objective of the discussion below is to set out a path for this Court to return judge-made ODP law to its "acorn" state, such that this Court could restate the entirety of ODP law in a nutshell, capturing all the doctrine's policy objectives:

*For a pair of patents, without a prior art relationship, in which at least one claimed invention of either patent is patentably indistinct from the claimed inventions of the other patent, infringement remedies under such ODP patents must be limited (1) by applying res judicata principles as though all the claims of both patents had been issued as a single patent and (2) by terminating any available infringement remedies after 20 years from the issue date of the earlier-issuing patent, save for any PTE.*

9

**A. ODP Should Be Confined To Separate Patents For Which The Statutory Nonobviousness Requirement Is Inapplicable And, Therefore, Cannot Assure Patentable Distinctness.**

Following enactment of the "nonobviousness" requirement[10] up through the 1984 enactment of the PLAA,[11] ODP could exist—and ODP consequences could apply—only to two patents naming the same inventive entity.[12] The doctrine was confined in this manner because, in all other circumstances, the claimed inventions[13] of the respective patents would have a prior art relationship under which the statutory nonobviousness requirement would be applicable to assure patentable distinctness, i.e., nonobviousness, as between the claimed inventions of the respective

---

[10] 35 U.S.C. § 103 of the Patent Act of 1952, Pub. L. No. 82-593, 66 Stat. 792 (1952).

[11] Patent Law Amendments Act of 1984, Pub. L. No. 98-622, 98 Stat. 3383 (1984).

[12] "The term 'double patenting' is properly applicable only to cases involving two or more applications and/or patents of the same inventive entity and should not be applied to situations involving commonly owned cases of different inventive entities. …" Double Patenting Notice at 834 O.G. 1615, January 9, 1967.

[13] A "'claimed invention' means the subject matter defined by a claim in a patent or an application for a patent." 35 U.S.C. § 100(j).

10

patents.[14]  Under the PLAA, Congress directed changes to ODP law so that its consequences should apply to commonly owned patents, but only to the extent the 1984 amendments to 35 U.S.C. § 103 constricted the application of the statutory nonobviousness requirement.[15]

After the PLAA, Congress has continued to adjust the situations in which the statutory nonobviousness requirement is inapplicable, such that ODP principles should be applied to fill this statutory void.  Changes of this ilk were part of both the CREATE Act and the Leahy-Smith America Invents Act (AIA).[16]  In enacting both laws, Congress again assumed that the role of ODP law was solely to patch over a prior art "gap" created in the statutory law.

---

[14] This outcome was dictated at least in part by *In re Bass*, 474 F.2d 1276 (C.C.P.A. 1973), in which prior inventions of another constituted "prior art" to any different inventive entity.

[15] "The Committee expects that the Patent and Trademark Office will reinstitute in appropriate circumstances the practice of rejecting claims in commonly owned applications of different inventive entities on the ground of double patenting."  130 Cong. Rec. 28,071 (Oct. 1, 1984).

[16] See 150 Cong. Rec. S7520-22 (Nov. 20, 2004) (Statement of Senator Orrin Hatch), addressing ODP issues created with the "prior art" exception under the CREATE Act and the Leahy-Smith America Invents Act (AIA), Pub. L. No. 112-29, 125 Stat. 284 (2011) § 3(b)(2), expressing the continuity of intent with the legislative history from the CREATE Act.

While the precedents of this Court appear to have evaded this "prior art relationship" limitation on the reach of the doctrine, there is no conceivable policy justification, particularly for patents subject to the URAA, for this Court not to return to this historic principle limiting the applicability of ODP consequences to the situation where the respective claims of two patents do not have a prior art relationship.[17]  The reason for this historic limitation is simple and compelling:  where the respective clamed inventions of two patents do have a prior art relationship, patentable distinctness is fully and completely tested under 35 U.S.C. § 103—the statutory test for nonobviousness.

### B.  ODP Consequences Should Be Confined To Imposing Limits On Infringement Remedies, Such That The Doctrine Does Not Address Patentability Or Require USPTO Examination For Patentability.

ODP is a judicially imposed, non-statutory, policy-driven doctrine that is exclusively premised on the *unfairness of allowing two patents with patentably indistinct claims to each be enforced as though the other patent had never been issued*.  As such, it is a doctrine entirely grounded on

---

[17] See *Lilly v. Barr*, *supra*, at 973, J. Newman, dissenting ("Double patenting thus is applied when neither patent is prior art against the other… .")

limiting the available infringement remedies, should the involved patents ever be enforced.

At its policy core, therefore, the doctrine is not one establishing a condition or requirement for patentability, but only a potential limitation on enforceability. The historic role of the USPTO in administering the law has been to contrive "patentability" rejections that can be mooted with the filing of an enforceability disclaimer. Nothing in the patent statute, much less the Constitution, mandates that the Office must make such *faux* patentability rejections that can be obviated via filing enforceability disclaimers.

Given the burden on the patent examining corps—and the lost opportunity cost of diverting USPTO examining resources away from a focus on statutory obviousness, claim definiteness, and disclosure sufficiency issues—this Court should disintermediate the USPTO from any continuing role in the administration of ODP law. It should do so by declaring that the courts have the sole responsibility for assessing the existence of ODP and imposing consequences that may limit available infringement remedies. As detailed below, such limitations on infringement remedies would supersede and moot any possible need for disclaimers of alienation, separate enforceability, or term—and with it any desirable, much

13

less necessary, role for the USPTO examining corps in administering the law.

### C. For Patents Without A Statutory "Prior Art" Relationship, ODP Should Exist If Any Claimed Invention From Either Patent Is Patentably Indistinct From Any Claimed Invention Of The Other Patent.

Assuming that the existence of ODP is limited as described in Section A of this brief, the "test" for determining whether a pair of patents represent ODP could be greatly simplified, yet fulfill all the doctrine's policy underpinnings. To this end, this Court should hold that, for two patents without a prior art relationship, *if any claimed invention of either patent is obvious (patentably indistinct) from a claimed invention of the other patent, ODP consequences should apply*.[18] Otherwise, this Court should hold that no patent should be subject to ODP consequences.

---

[18] The rationale for a "test" that operates independently of relative patent issue or expiration dates, or the respective patent applications filing dates, derives in large measure from the statutory prior art provisions. Except for entirely unrelated patent filings that were effectively filed on the same date, the only patent filings that can contain respective claimed inventions that do not have a prior art relationship are those with claimed inventions subject to a joint research agreement (35 U.S.C. § 102(c)) or commonly invented or commonly owned (35 U.S.C. § 102(b)(2)). In each such situation, the related patent filings producing multiple patents represent potential *prosecution choices*. Using a different approach to patent filings for such claimed inventions without a prior art relationship to one another,

Historically, for patents that issued on different dates, ODP could exist only if one or more claims of the *later-issued* patent were patentably indistinct from a claimed invention of an *earlier issued* patent.  Even in such a limited circumstance, ODP could be avoided in certain situations through application of a "two-way" test under which—even if the claim of the later-issued patent were patentably indistinct from the claims of an earlier-issued patent—if the claims of the earlier-issued were not patentable indistinct from the claims of the later-issued patent, no ODP existed.[19]  Rather than the complications and limitations of a "one-way" or a "two-way" test, ODP law could be boiled down to an "*either-way*" test to be applied to patents in

---

the claimed inventions of the respective patents could have been sought and secured via a single, amalgamated patent filing.  As *prosecution choices* to secure separate patents, they should not present a compelling reason for evading a finding of ODP under any form of "one-way" or "two-way" test.  An "either-way" test ought to suffice for fairness purposes, particularly if infringement remedies would be limited as described in Part D and Part E of this brief.

[19] *In re Berg*, 140 F.3d 1428, 1432 (Fed. Cir. 1998), "Generally, a one-way' test has been applied to determine obviousness-type double patenting. Under that test, the examiner asks whether the application claims are obvious over the patent claims. In a recent case, with unusual circumstances, however, this court instead applied a 'two-way' test. See *In re Braat*, 937 F.2d 589, 592 (Fed. Cir 1991)."

which the respective claimed inventions of the two patents did not have a prior art relationship.

**D. The Possibility For Harassment Of Accused Infringers In Cases of ODP Should Be Addressed By Applying *Res Judicata* Principles, As Though The Claims Of Both Patents Had Issued In A Single Patent.**

ODP law must account for the 2004 CREATE Act that permits patents containing patentably indistinct claimed inventions to be separately owned. The CREATE Act's legislative history (and now the AIA) do so by providing that the respective owners of the ODP patents must each disclaim the right to *separately enforce* the patents.[20]

For ODP patents containing patentably indistinct claimed inventions that are commonly owned, potential harassment of accused infringers has

---

[20] 150 Cong. Rec. S7520-22 (Nov. 20, 2004) (Statement of Senator Orrin Hatch). The "separate enforcement" bar was explained in the Hatch Statement at S7521, "the CREATE Act effectively requires parties that separately own patents subject to the CREATE Act to enter into agreements not to separately enforce patents where double patenting exists and to join in any required disclaimer." AIA § 3(b)(2), now dictates that this "separate enforceability" be administered "in a manner consistent with the legislative history of the CREATE Act."

historically been addressed through disclaimers of alienation.[21] Doing so limits the possibility that the patents could become *separately enforced*.

This Court has held that, for each non-ODP patent, in applying the Supreme Court's *Kessler*[22] holding, only a *single cause of action* is created for any subject matter accused of infringement, thereby precluding harassment of an accused infringer via successive actions to enforce the patent against such subject matter.[23]  This *single cause of action* rule can entirely address possible harassment from ODP patents by treating them as

---

[21] *In re Fallaux, supra.*; *In re Griswold*, 365 F.2d 834, 840 (C.C.P.A. 1966) (fn. 5).  "The terminal disclaimers which have been filed are ingenious. The pertinent portion of the disclaimer … includes an imaginative solution to one of the more theoretical objections to double patenting, split ownership of two patents and potential harassment."

[22] *Kessler v. Eldred,* 206 U.S. 285 (1907).

[23] *In re PersonalWeb Technologies*, 961 F.3d 1365, 1376 (Fed. Cir. 2020), applying *Kessler v. Eldred,* 206 U.S. 285 (1907).  "In addition to the two traditional pillars of preclusion law—claim and issue preclusion—there is a separate and less frequently invoked doctrine that derives from the Supreme Court's decision in *Kessler v. Eldred*. We have generally held that claim preclusion cannot apply to acts of alleged infringement that occur after the final judgment in the earlier suit. … Likewise, if the requirements of issue preclusion are not satisfied, relief under that doctrine will not be available to protect post-judgment activity. … The Kessler doctrine, however, 'fills the gap' left by claim and issue preclusion, by 'allowing an adjudged non-infringer to avoid repeated harassment for continuing its business-as-usual post-final judgment in a patent action where circumstances justify that result.'"

17

though all claims of both patents had issued in a single patent.  Doing so would supersede the need for a disclaimer of separate enforcement or alienation.[24]

### E. ODP Infringement Remedy Limitations Should Reflect The Potential For A Single URAA Patent To Secure A "Right To Exclude" Period Of Up To 20 Years, As Well As Congress' Explicit Justification For PTE.

Beginning in 1861,[25] and continuing with the 1952 Patent Act,[26] the "right to exclude" under an individual U.S. patent was granted for the 17-year period commencing on the patent's issue date and ending on its expiration date.  For patentably indistinct claims in serially issued ODP

---

[24] To accomplish the policy objective of preventing possible harassment for all patents subject to ODP infringement remedy limitations, the preclusion of "separate enforcement" needs to apply irrespective of which of the involved patents was *initially* litigated.  Indeed, this is exactly how Congress envisioned ODP law would operate for all CREATE Act ODP patents.  Hence, the status as earlier-filed/later-filed, earlier-issued/later-issued, or earlier-expiring/later-expiring should be of no relevance to the application of the *res judicata* limitation on separate enforcement.

[25] Act of Mar. 2, 1861, ch. 88, § 16, 12 Stat. 246, providing  "That all patents hereafter granted shall remain in force for the term of seventeen years from the date of issue; and all extension of such patents is hereby prohibited."

[26] The 1952 Patent Act, 35 U.S.C. § 154 (1952) provided "[e]very patent shall contain a … grant to the patentee, his heirs or assigns, for the term of seventeen years, of the right  to exclude… ."

18

patents, nothing in the 1952 Patent Act timewise limited the *aggregate* "right to exclude" period for such patents—that is, nothing in the statute itself limited the length of time between the issue date of the earliest-issued ODP patent and the expiration date of the latest-expiring ODP patent.[27]

ODP law served to fill this statutory gap that had left open the opportunity for an *unlimited* "right to exclude" period for patentably indistinct claims of ODP patents. This gap-filling aspect of OTPD law was notable because it meant that ODP policy fulfilled a significant constitutional purpose.[28]

This role of ODP in addressing the possibility for an unjustified—even unlimited—"right to exclude" period through ODP patents was profoundly diminished once the URAA took effect.  First, the URAA set a

---

[27] Prior to the URAA, patentably indistinct claims could result in a period of a "right to exclude" that was not temporally limited by the statute because pre-URAA patents could serially issue—without limitation as to timing and number—with successive 17-year terms from issue date to expiration date.

[28] Under U.S. Const. art. I, § 8, cl. 8, the authority delegated to Congress for authorizing the "exclusive Right" to "Inventors" for their "Discoveries" was confined to "limited Times."  The pre-URAA patent statute did not even purport to timewise limit the period of "exclusive Rights" for patentably indistinct claims of ODP patents, hence the constitutional significance of pre-URAA ODP doctrine in doing so.

maximum, 22-year limitation on the *aggregate* "right to exclude" period for patentably indistinct claims of ODP patents.[29]  Second, this 22-year maximum was just two years longer than the maximum "right to exclude" period that the URAA had provided could be secured through a single U.S. patent.[30]  In effect, the URAA statute had transformed what had been a constitutionally significant ODP policy into an assessment of whether and

---

[29] Under the URAA, the maximum aggregate "right to exclude" period for patentably indistinct claims, running from the issue date of the earlier-issued ODP patent to the expiration date of the later-expiring ODP patent was no more than 22 years.  Absent intervening prior art, this period of up to 22 years was possible because patentably indistinct claims in a later-expiring patent with an effective filing date that was not more than one year after the issue date of the earlier-issued patent could be sought. This timing required the filing of at least a provisional application containing such claims not later than one-year after the issue date of the earlier-issued patent.  In this particular circumstance the one-year "grace period" (now in 35 U.S.C. § 102(b)), coupled with the use of a provisional application filing (35 U.S.C. § 119(e), could yield a later-issued patent expiring up to 22 years after the issue date of the earlier-issued patent. Subsequent to the enactment of the URAA, 35 U.S.C. § 154(b) provided for PTA under which such a later-expiring patent could extend this aggregate "right to exclude" period beyond this 22-year period.

[30] Under the URAA, through 35 U.S.C. § 154(a)(2), *but for processing time in the USPTO*, the statute provided that each original, nonprovisional patent filing (i.e., a nonprovisional patent application not benefiting from 35 U.S.C. § 120) would receive an issue-date-to-expiration-date period for its "right to exclude" of a full 20 years.

how—if at all—ODP policy should address this potential for a two-year time difference.

Unlike the pre-URAA patent statute, this two-year time difference between the maximum statutory "right to exclude" period for single patent and the maximum aggregate ODP "right to exclude" period cannot not be attributed to some congressional oversight or inattention. It is not a statutory gap that needed to be filled. Rather, even today, this potential for a two-year difference derives from just a few policy-grounded sections of the contemporary patent statute evidencing congressional justification for the patent term add-ons: 35 U.S.C. § 102(a)(2) (excluding from prior art a "names another inventor" patent filing) and § 102(b) (offering inventors "grace period" and co-worker/collaborator prior art exceptions, which were expanded by Congress in the AIA[31]), and 35 U.S.C. § 119 (creating foreign

---

[31] "[T]he exceptions from prior art in [§ 102(b)] collectively implement a new [AIA] patent law that retains and then enhances the features of pre-AIA U.S. patent law that were friendly towards inventors and collaboration. … [They] preserve in its entirety the one-year "grace period" under which the inventor's (or a joint inventor's) own work is disqualified as prior art. … [and] first preserve and then extend the protection that co-workers and collaborators enjoyed under pre-AIA patent law… ." Robert A. Armitage, *Understanding the America Invents Act and Its Implications for Patenting*, 40 AIPLA Q.J. 1, 86 (2012).

priority rights and the URAA's § 119(e) U.S. provisional filing rights affording domestic inventors patent term parity opportunities with foreign-based inventors).

In these circumstances, three factors—the diminished policy role for ODP under the post-URAA patent law, the limited ODP patent term "wiggle room" in the current patent statute, and the explicit congressional policy justifications for this "wiggle room"—might have led this Court to determine that, under the contemporary patent statute, *Congress had acted to justify whatever aggregate "right to exclude" period ODP patents might secure.* Such a finding presumably would have required this Court to hold that the statutory possibility for a maximum, 22-year, aggregate ODP "right to exclude" period was manifestly justified as a consequence of the provisional/priority application filing opportunities and public policy drivers for the inventor "grace period."[32]

---

[32] In *Allergan* at 1367, this Court noted that Congress in 1836 "increased to twenty-one years from patent issuance" the term of a U.S. patent. This indicates that a "right to exclude" beyond the URAA's 20-year maximum cannot be dismissed out of hand as a "right to exclude" period that Congress could not have justified.

As a result (aside from addressing 35 U.S.C. § 154(b)[33] and § 156[34]

that can lengthen the 22-year period), this Court could have held that the

URAA had eliminated any unjustified timewise extension of the right to

exclude in cases of ODP.  Such a judicial-hands-off approach would have

reflected that no aspect of the post-URAA ODP doctrine is essential to

assure that the Constitution's "limited Times" requirement remains satisfied.

   A review of this Court's ODP jurisprudence to date indicates that the law

has gone down a diametrically-opposite path.  As addressed in the

discussion above, at least through some of its precedents, this Court appears

to be interpreting the ODP "unjustified timewise extension of the right to

exclude" policy in some circumstances to demand a focus on whether

patentably indistinct claims in ODP patents secured different expiration

---

[33] Under the American Inventors Protection Act of 1999, Pub. L. No. 106-113, 113 Stat. 1501A-552 (1999) (AIA), 35 U.S.C. § 154(b) provided for patent term adjustment (PTA) based upon delays in the processing of patent applications at the USTPO.

[34] Under the Drug Price Competition and Patent Term Restoration Act of 1984, Pub. L. No. 98-417, 98 Stat. 1585 (1984) (Hatch-Waxman Act), 35 U.S.C. § 156 provided for patent term extensions (PTE) of up to five years.

dates and, if so, dictating that the ODP patent term must typically end with the expiration date of the earliest-expiring of the ODP patents.  Such precedents serve to ignore the length of the actual time period for the aggregate "right to exclude"—and can impose ODP consequences no matter how short that aggregate period might be.[35]  Just comparing expiration dates

---

[35] This Court has invalidated patents on ODP grounds even where the aggregate ODP "right to exclude" period for the involved patents fell well short of pre-URAA, 17-year "right to exclude" period, much less the 20-year maximum.  In *Cellect*, the four individual ODP patent pairs had aggregate "right to exclude" periods 12.7, 15.4, 17.1, and 17.4 years, respectively.  Each of these aggregate ODP periods was substantially shorter than the 20-year maximum period that a single URAA patent can secure.  Indeed, their common parent patent (U.S. Patent 5,929,901, issued on July 19, 1999 and expired on October 6, 2017) secured a much longer "right to exclude" period of 18.2 years.  The common parent patent expired on the same date that, absent any PTA, each of Cellect's invalidated ODP patents would have expired.  The ODP determination for the pair of Cellect ODP patents that had secured only a 12.7-year aggregate "right to exclude" period was grounded on the obviousness of claims of the *earlier-issued* patent ('369 patent, issued July 23, 2002) over claims of the *later-issued* patent ('036 patent, issued March 3, 2005)—based on the status of the earlier-issued patent as the *later-expiring patent*. This later expiration date of the '369 patent was entirely due to a 45-day PTA (i.e., with PTA, it expired on November 17, 2017 rather than October 6, 2017).  The '369/'036 ODP patent pair would not have exceeded a 20-year "right to exclude" period even with 1750 days (4.8 years) of PTA.

24

entirely circumvents the *Schneller*-dictated analysis of the aggregate "right to exclude" period.[36]

In moving down this polar-opposite path, this Court has eschewed a third path that the post-URAA ODP doctrine could have taken. This third path would interpret *Schneller* to mean that ODP consequences were appropriate only to negate an aggregate ODP "right to exclude" period that would be in excess of the maximum period that a *single* URAA patent's claims could secure—so that the only relevance of patent issue dates or patent expiration dates in an ODP analysis would be the *time difference* between the two. For two ODP patents, this would mean eliminating any infringement remedies based upon activities taking place more than 20 years from the issue date of the earlier-issued patent.

---

[36] In a similar vein, again as noted above, this Court appears to be heading down a parallel path in some of its precedents by applying ODP consequences in situations where the claims of a later-expiring patent were obvious with respect to the claims of an earlier-expiring patent, irrespective of which patent had issued first, and even if PTA were the sole basis for the difference in expiration dates. In *Allergan*, this Court appears to have taken a step back from its *Cellect* holding to this effect, not by overruling it, but by articulating ways to confine it.

This appeal presents this Court with the opportunity to reconsider whether this Court is obliged, under the reasoning of the Supreme Court in *Eldred*,[37] to adopt this middle path. Specifically, do this Court's current ODP precedents, which can be focused on patent expiration dates alone, fail to align with the required *Eldred* deference to the "limited Times" for "exclusive Rights" that Congress justified under the URAA—and must any contrary precedents of this Court be overruled?

As a starting point, this Court's ODP "unjustified timewise extension of the right to exclude" jurisprudence should acknowledge that the "right to exclude" under a patent cannot commence until the patent *issue date*. The URAA amended 35 U.S.C. § 154 to state this specifically.[38] There is no

---

[37] *Eldred v. Ashcroft*, 537 US 186, 205, 222 (2003). The Supreme Court explained that a law extending the term of both future and existing copyrights for an additional statutory period of 20 years "reflects judgments of a kind Congress typically makes, judgments we cannot dismiss as outside the Legislature's domain." According to the Supreme Court, the U.S. Constitution "empowers Congress to determine the intellectual property regimes that, overall, in that body's judgment, will serve the ends of the [Intellectual Property] Clause. … The wisdom of Congress' action, however, is not within our province to second-guess."

[38] 35 U.S.C. § 154(a)(1), providing a "patent shall … grant to the patentee … the right to exclude others from making, using, offering for sale, or selling the invention throughout the United States" and

possibility for a *timewise* extension of a right that, as expressly set out in the patent statute, has not yet commenced.

Second, with the URAA, Congress did not retreat from its pre-URAA justification for a post-issuance, 17-year period for the "right to exclude" of a single patent. Rather, it did the opposite.

As discussed above, Congress provided that the claims of a single URAA patent could secure a significantly longer period for its "right to exclude" than just 17 years. Congress even went so far as use its *Eldred-*sanctioned authority to extend the terms of certain *existing patents* so that their original 17-year "right to exclude" period could continue for up to a maximum of 20 years from their respective issue dates.[39] Through the URAA, Congress conveyed an unmistakable message to the courts that a potential "right to exclude" period of up to a 20-year maximum for a single URAA patent could not be deemed to be unjustified.

---

35 U.S.C. § 154(a)(2) noting that " such grant shall be for a term beginning on the date on which the patent issues… ."

[39] See, for example, 35 U.S.C. § 154(c), in which Congress retroactively extended exclusive rights under certain pre-URAA patents to a period greater than 17-years if the patent's expiration date would have been earlier than 20 years from the patent's original, nonprovisional filing date.

27

For at least these reasons, this Court should hold that Congress, through the URAA, justified an aggregate "right to exclude" period for patentably indistinct claims of OTPD patents, at least so long as that aggregate period did not exceed the 20-year maximum "right to exclude" period Congress made possible for a single URAA patent.[40]

In addition, as noted above, Congress expressly provided for patent term extensions or PTE under the Hatch-Waxman Act.   PTE can extend the term of any individual patent for a period of up to five years beyond the URAA's otherwise-applicable 20-year maximum.   This Court should find (again, applying the reasoning of the Supreme Court in *Eldred*) that such patent term extensions are *justified* and should be disregarded in the determination of whether the congressionally justified period of up to 20 years of exclusive rights has been exceeded.

Finally, for PTA, this Court should do just the opposite.   Under 35 U.S.C. § 154(b), Congress did not authorize a "right to exclude" period

---

[40] Were this Court to do so, and nothing more, it could further hold that ODP law could be administered by the courts so that disclaimers of term would no longer be necessary.  The alternative to such disclaimers in cases of ODP would be for the courts to deny the patent owner any infringement remedies after the end of this "justified" period for the "right to exclude."

for any single patent of greater than 20 years, even with PTA added to the term. Thus, the PTA-extended expiration date should be relevant to whether the congressionally justified 20-year period for ODP infringement remedies would be exceeded.

## CONCLUSION

As the patent statute has been modernized, so should this Court's obviousness-type double patenting law. The time has come for a simplified restatement of its reach and effect. Given the doctrine's lessened policy implications following the URAA, a restated ODP law could become vastly more concise:

*For a pair of patents, without a prior art relationship, in which at least one claimed invention of either patent is patentably indistinct from the claimed inventions of the other patent, infringement remedies under such ODP patents must be limited (1) by applying res judicata principles as though all the claims of both patents had been issued as a single patent and (2) by terminating any available infringement remedies after 20 years from the issue date of the earlier-issuing patent, save for any PTE.*

29

Respectfully submitted,

/s/Robert A. Armitage
Robert A. Armitage
*Amicus Curiae*
320 Seaview Court #1811
Marco Island, FL 34145
(703) 801-6334
raarmitage@aol.com

30

# United States Court of Appeals
# for the Federal Circuit

*In re Ablynx N.V., Sanofi, 2026-1333*

## CERTIFICATE OF SERVICE

I hereby certify that on the date indicated below, I caused the foregoing **AMICUS CURIAE BRIEF OF ROBERT A. ARMITAGE IN SUPPORT OF NEITHER PARTY** to be filed via CM/ECF with the Clerk of the Court, thereby electronically serving it on all counsel of record in this matter.

Date: April 25, 2026

/s/Robert A. Armitage
Robert A. Armitage
320 Seaview Court #1811
Marco Island, FL 34145
(703) 801-6334
raarmitage@aol.com

31

## CERTIFICATE OF COMPLIANCE

Amicus curiae certifies that:

1. The brief complies with the page limitation of Federal Rules of Appellate Procedure 29(a)(5) because, excluding the exempted portions as provided in Fed. Cir. R. 32(b), it does not exceed either 15 double-spaced pages or 6,500 words, representing one-half of the limitations set out in Federal Rules of Appellate Procedure 32(a)(7)(A).

2. The brief complies with the typeface requirements of Federal Rules of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rules of Appellate Procedure 32(a)(5), because it has been prepared using Microsoft Word for Microsoft 365 (Version 2603 Build 19822.20104) 64-bit in a proportionally spaced typeface: Times New Roman, font size 14 point.


Date:  April 25, 2026                    /s/Robert A. Armitage
                                          Robert A. Armitage

32