No. 26-1333

IN THE
# United States Court of Appeals for the Federal Circuit

IN RE: ABLYNX N.V., SANOFI,

*Appellants*

On Appeal from the United States Patent and Trademark Office,
Patent Trial and Appeal Board No. IPR2026-000193

## BRIEF OF CANON INC., NAGRA USA LLC, NOKIA CORPORATION, RINGCENTRAL, INC., SONOS, INC., AND SUTRO BIOPHARMA, INC., AS AMICI CURIAE IN SUPPORT OF APPELLANTS

Clement S. Roberts
ORRICK, HERRINGTON &
   SUTCLIFFE LLP
405 Howard Street
San Francisco, CA 94105
(415) 773-5700

Irena Royzman
Samantha M. Leff
ORRICK, HERRINGTON &
   SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019
(212) 506-5000

Dana Sublett
ORRICK, HERRINGTON &
   SUTCLIFFE LLP
2100 Pennsylvania Ave. NW
Washington, DC 20037
(202) 339-8400

*Counsel for Amici Curiae*

i

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 26-1333

**Short Case Caption** In re: Ablynx N.V., Sanofi

**Filing Party/Entity** Amicus Curiae / Canon Inc., Nagra USA LLC, Nokia Corporation, RingCentral, Inc., Sonos, Inc., and Sutro Biopharma, Inc.

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 05/01/2026

Signature: /s/ Irena Royzman

Name: Irena Royzman

i

FORM 9. Certificate of Interest

Form 9 (p. 2)
March 2023

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.  ☐ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.  ☐ None/Not Applicable |
| Canon Inc. | N/A | N/A |
| Nagra USA LLC | N/A | Kudelski SA |
| Nokia Corporation | N/A | N/A |
| RingCentral, Inc. | N/A | N/A |
| Sonos, Inc. | N/A | BlackRock Inc. |
| Sutro Biopharma, Inc. | N/A | N/A |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

☐     Additional pages attached

ii

FORM 9. Certificate of Interest

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑ None/Not Applicable          ☐ Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below)    ☐ No    ☑ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable          ☐ Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |

**iii**

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST ...............................................................i

TABLE OF AUTHORITIES ................................................................ v

STATEMENT OF INTEREST ............................................................. 1

INTRODUCTION ............................................................................3

ARGUMENT ....................................................................................5

I.    *Allergan*'s Reasoning Controls The Outcome Here. ....................... 6

    A.    ODP's foundational purpose of preventing unjustified timewise patent extension governs the reference-patent inquiry. ................................................................................... 6

    B.    The Board erred in limiting *Allergan* to the specific facts of that case. ................................................................. 11

    C.    *Allergan* encourages innovation; the Board's decision punishes it. ....................................................................... 13

II.    Anti-Harassment Rationale Cannot Be A Standalone Basis For ODP. ........................................................................................ 15

III.    The Board's Approach Creates Unprecedented Unpredictability And Destabilizes The Patent System. .............. 17

CONCLUSION .................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AbbVie Inc. v. Mathilda & Terence Kennedy Inst. of Rheumatology Tr.*,
764 F.3d 1366 (Fed. Cir. 2014) ........................................................ 9

*Allergan USA, Inc. v. MSN Lab'ys Priv. Ltd.*,
111 F.4th 1358 (Fed. Cir. 2024) ........................... 2, 3, 4, 7, 8, 9, 11, 13

*Application of Robeson*,
331 F.2d 610 (C.C.P.A. 1964) ......................................................... 17

*Application of Jentoft*,
392 F.2d 633 (C.C.P.A. 1968) ......................................................... 17

*Ex parte Baurin*,
Appeal 2024-002920, 2024 WL 4921198 (P.T.A.B. Nov. 6, 2024) ................................................................................................ 12

*In re Fallaux*,
564 F.3d 1313 (Fed. Cir. 2009) ........................................... 15, 16, 19

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
535 U.S. 722 (2002) ........................................................................ 17

*Gilead Scis., Inc. v. Natco Pharma Ltd.*,
753 F.3d 1208 (Fed. Cir. 2014) ........................................................ 7

*In re Hubbell*,
709 F.3d 1140 (Fed. Cir. 2013) ................................................ 16, 19

*Pfaff v. Wells Elecs., Inc.*,
525 U.S. 55 (1998) ........................................................................ 6, 7

v

## Statutes & Rules

35 U.S.C. § 154(a)(2)............................................................... 10

Fed. Cir. R. 29(a) ................................................................... 1

## Other Authorities

Appeals Review Panel Order, *Ex parte Baurin*, Appeal 2024-002920 (P.T.A.B. Mar. 5, 2026) ......................................................... 2

Brief of Canon Inc., H. Lundbeck A/S, Nagra Kudelski Group, Nokia Corporation, RingCentral, Inc., Sonos, Inc., and Sutro BioPharma, Inc. as Amici Curiae, *Ex parte Baurin*, Appeal 2024-002920 (P.T.A.B. Apr. 1, 2026) ......................... 3

Coke Morgan Stewart, Memorandum re *Interim Processes for PTAB Workload Management* (Mar. 26, 2025), https://perma.cc/UC4U-XHQY ........................................................ 17

**STATEMENT OF INTEREST[1]**

Amici curiae Canon Inc., Nagra USA LLC, Nokia Corporation, RingCentral, Inc., Sonos, Inc., and Sutro Biopharma, Inc., are industry leaders operating across technology sectors, including imaging, audio equipment, telecommunications, digital security, pharmaceuticals, and biotechnology.  They discover, develop, and commercialize innovations across these varied industries.  Amici rely on a well-run, predictable patent system that fairly rewards investments in innovation.

Obviousness-type double patenting, or ODP, is a judicially created doctrine that prevents unjustified timewise extension of patent exclusivity.  ODP does so by precluding patent owners from obtaining a second, later-expiring patent on an invention that is an obvious variant of one already patented.  The U.S. Patent and Trademark Office patent examiners and Patent Trial and Appeal Board apply this doctrine inconsistently, resulting in conflicting decisions.  Sometimes in applying

---

[1] No party's counsel authored this brief in whole or in part.  No party, party's counsel, or any person other than amici or their counsel contributed money intended to fund preparing or submitting this brief.

Pursuant to Federal Circuit Rule 29(a), all parties have consented to the filing of this brief.

the doctrine (as here), examiners use a later-filed, later-expiring patent to reject an earlier-filed, earlier-expiring patent, and, when that rejection is challenged, the Board affirms.  Other times, the Board reverses.  The result is an unpredictable landscape for patent applicants and owners like amici.

Given the Board's inconsistent application of ODP, USPTO Director John Squires recently convened an Appeals Review Panel (ARP) to examine an ODP Board decision and asked amicus curiae to address three issues: (1) the applicability of *Allergan USA, Inc. v. MSN Laboratories Private Ltd.*, 111 F.4th 1358 (Fed. Cir. 2024) in ODP analysis; (2) whether examiners should determine projected expiration dates to support ODP rejections during prosecution; and (3) whether the risk of separate ownership and preventing potential harassment by separate owners of claims to obvious variants of an invention is an independent basis that supports an ODP rejection during prosecution. Appeals Review Panel Order, *Ex parte Baurin*, Appeal 2024-002920 (P.T.A.B. Mar. 5, 2026).  Amici submitted a brief in response, urging the Board not to invalidate claims for ODP when patent term is not extended.  Brief of Canon Inc., H. Lundbeck A/S, Nagra Kudelski

Group, Nokia Corporation, RingCentral, Inc., Sonos, Inc., and Sutro BioPharma, Inc. as Amici Curiae, *Ex parte Baurin*, Appeal 2024-002920 (P.T.A.B. Apr. 1, 2026).

Amici believe ODP is a directional doctrine and that later-filed, later-expiring patents cannot invalidate earlier-filed, earlier-expiring patents. Earlier-expiring patents simply do not extend patent term. Amici therefore request that, consistent with the fundamental purpose of ODP, the Court make clear that later-filed, later-expiring patents are not proper reference patents for earlier-filed, earlier-expiring patents.

## INTRODUCTION

Obviousness-type double patenting is a judicially created doctrine with a "primary goal" of "prevent[ing] patentees from obtaining a *second* patent on a patentably indistinct invention to effectively extend the life of a *first* patent to that subject matter." *Allergan USA, Inc. v. MSN Lab'ys Private Ltd.*, 111 F.4th 1358, 1367, 1369 (Fed. Cir. 2024). Guided by that purpose, this Court held in *Allergan* that a "first" patent—there, a "first-filed, first-issued, later-expiring claim"—"cannot be invalidated by" a second patent—there, "a later-filed, later-issued, earlier-expiring reference claim having a common priority date." *Id.* at

3

1369. The question at the heart of this case is whether a later-filed, later-expiring claim can properly serve as an ODP reference for invalidating an earlier-filed, earlier-expiring claim. Applying the reasoning of *Allergan*, "the only conclusion consistent with the purpose of the ODP doctrine" is no. *Id.*

Yet the Board reached the opposite conclusion here, permitting a later-filed, later-expiring patent to invalidate an earlier-filed, earlier-expiring application based on ODP. Unlike *Allergan*, the Board's decision was not driven by ODP's primary purpose, the prevention of an unjust patent term extension. Instead, the Board's decision was based on an anti-harassment rationale. No court has ever relied on the anti-harassment rationale as a sole, independent basis for ODP. Not only did the Board deviate from *Allergan* and the fundamental purpose of ODP, but it also expressly diverged from a preceding Board decision which reached the opposite conclusion on nearly identical facts.

The Board's decision ignores the directionality of ODP and puts earlier-filed, earlier-expiring patents at risk across technologies. It turns a tool designed to prevent patent term extension into a weapon to destroy lawfully earned patents. If not corrected, the Board's approach

4

would destabilize patent portfolios across every technology sector, chill investment in research and development, and punish the very innovation the patent system exists to promote. This Court should therefore reverse the Board's affirmance of the rejection of the claims.

## ARGUMENT

Consistent with this Court's precedent and the bedrock purpose of obviousness-type double patenting, a later-filed, later-expiring claim cannot be a proper ODP reference for invalidating an earlier-filed, earlier-expiring claim, even if the two do not share a priority date. The Board made two compounding errors in concluding otherwise.

First, the Board limited *Allergan* to the "narrow" circumstance of when challenged and referenced patents have a common priority date. But *Allergan*'s reasoning and its articulation of the fundamental principles of ODP apply in full force outside of the specific facts of *Allergan*. *Infra* § I.

Second, the Board erroneously relied on an anti-harassment rationale as the sole basis of upholding the ODP rejection at issue, and in doing so, undermined the primary, fundamental purpose of ODP. A

concern over separate ownership is not an independent basis for ODP. *Infra* § II.

Both of those errors pose serious threats to the patent system and to participants in that system like amici. Permitting later-filed, later-expiring patents to invalidate earlier-filed, earlier-expiring patents is devastating for innovators. It undercuts the very motivation for patent law—to encourage invention and disclosure. It discourages collaboration and follow-on innovation. And it creates investment uncertainty and portfolio devaluation. *Infra* § III.

The Court should therefore reverse.

## I.    *Allergan*'s Reasoning Controls The Outcome Here.

### A.    ODP's foundational purpose of preventing unjustified timewise patent extension governs the reference-patent inquiry.

Patent law is founded on "carefully crafted bargain that encourages both the creation and the public disclosure of new and useful advances in technology, in return for an exclusive monopoly for a limited period of time." *Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55, 63 (1998). "[I]n exchange for a patent, an inventor must fully disclose his invention and promise to permit free use of it at the end of his patent

term." *Gilead Scis., Inc. v. Natco Pharma Ltd.*, 753 F.3d 1208, 1212 (Fed. Cir. 2014). That "balance between the interest in motivating innovation and enlightenment by rewarding invention with patent protection on the one hand, and the interest in avoiding monopolies that unnecessarily stifle competition on the other, has been a feature of the federal patent laws since their inception." *Pfaff*, 525 U.S. at 63.

ODP's "primary goal is to prevent an unjustified timewise extension of patent exclusivity beyond the life of a patent." *Allergan*, 111 F.4th at 1367; *Gilead*, 753 F.3d at 1212. "If an inventor could obtain several sequential patents on the same invention, he could retain for himself the exclusive right to exclude or control the public's right to use the patented invention far beyond the term awarded to him under the patent laws." *Gilead*, 753 F.3d at 1212. ODP prevents that circumstance.

This Court has consistently rooted ODP analysis in that foundational purpose by focusing on whether a patentee would receive an unjust patent term extension of an earlier patent through a later, patentably indistinct patent. In *Allergan*, for example, the challenged patent (the '356 patent) was a first-filed and first-issued patent, though,

7

as a result of patent term adjustment, it expired later than the purported reference patents (the '011 patent and the '709 patent). 111 F.4th at 1363-64. A timeline of the challenged and reference patents is shown below.



'356 Appl.
Mar. 14, 2005

'356 Patent
June 22, 2010

467 Days PTA
June 24, 2026

No PTA

'011 Appl.
July 19, 2010

'011 Patent
Jan. 1, 2013

No PTA

'709 Appl.
Nov. 30, 2012

'709 Patent
Dec. 17, 2013

Expiration without PTA
Mar. 14, 2025

*Id.* at 1364. *Allergan* evaluated whether the "first-filed, first-issued, later-expiring claim" could be "invalidated by a later-filed, later-issued, earlier-expiring reference claim having a common priority date," and ultimately held that "the only conclusion consistent with [ODP's] purpose" of preventing an unjustified timewise extension was that it could not. *Id.* at 1369.

*Allergan* explained that the "primary goal" of ODP is "to prevent patentees from obtaining a *second* patent on a patentably indistinct invention to effectively extend the life of a *first* patent to that subject

matter." *Id.* at 1367, 1369. Turning to the patents at issue, *Allergan* held that the '356 patent was "undoubtedly the 'first' patent," and the '011 and '709 patents were "unquestionably 'second' to that patent." *Id.* at 1369. And as the first patent, the '356 patent "sets the maximum period of exclusivity for the claimed subject matter and any patentably indistinct variants." *Id.* So even though the '356 patent expired later than the '011 and '079 patents, there was no risk of an unjustified timewise extension. *Id.* Thus, it would be "antithetical to the principles of ODP" to invalidate the '356 patent based on the '011 and '709 patents. *Id.*; *see also AbbVie Inc. v. Mathilda & Terence Kennedy Inst. of Rheumatology Tr.*, 764 F.3d 1366, 1373 (Fed. Cir. 2014) ("The ban on double patenting ensures that the public gets the benefit of the invention after the *original* period of monopoly expires." (emphasis added)).

Applying the reasoning articulated in *Allergan* here, the only conclusion consistent with the purpose of ODP is that a later-filed, later-expiring claim cannot be a proper reference to invalidate a first-filed, earlier-expiring claim. The application at issue was filed on

9

August 23, 2021.  Appx5.  Its patent term filing date[2] is June 25, 2012,

and its expiration is therefore June 25, 2032.  Appx5.  The examiner

rejected application claims 51 and 54-56 over various purported

reference patents—all of which are later-filed, later-expiring patents.

Appx3-4, 6.  The publication date of the application at issue predates

the patent term filing date for each reference patent.  Appx5.  As an

example, the timeline for the application at issue and one of the

reference patents (the '364 patent) is shown below.



Appx3, 5, 12.

On these facts, the application would not extend any period of

exclusivity on the claimed subject matter.  It does not violate any of the

fundamental principles of obviousness-type double patenting.  Under

---

[2] "Patent term filing date" refers to the effective filing date, i.e., the date from which the 20-year patent term is measured under 35 U.S.C. § 154(a)(2).

*Allergan*'s analytical framework, the purported reference patents simply are not proper ODP references.

## B.    The Board erred in limiting *Allergan* to the specific facts of that case.

The Board, however, held that *Allergan* is limited to the "narrow" circumstance where the challenged patent and the reference patent have a common priority date.  *See* Appx8.  That is wrong.  Although the shared priority date was considered in *Allergan*, the Court did not start or end its inquiry with whether the challenged and reference patents had a common priority date.  *See* 111 F.4th at 1369.  Rather, as just discussed, *Allergan*'s holistic analysis was driven by "the purpose of the ODP doctrine … to prevent patentees from obtaining a *second* patent … to effectively extend the life of a *first* patent to that subject matter."  *Id.*

There is no reason why ODP's fundamental purpose applies only in the precise factual context of *Allergan*.  Whether patents are in the same family or in unrelated families has no impact on whether a patentee is securing an unjustified timewise extension.  The only reasonable conclusion to be drawn from *Allergan* is that the fundamental purpose of the doctrine should always serve as the guiding principle for determining whether a reference qualifies as a proper ODP

11

reference.  To blindly assert obviousness-type double patenting while jettisoning the core underlying purpose of the doctrine is error.

Indeed, presented with nearly identical facts as this case, the Board (correctly) reached the opposite conclusion based on *Allergan*'s "compelling" reasoning.  *Ex parte Baurin*, Appeal 2024-002920, 2024 WL 4921198, at *5 (P.T.A.B. Nov. 6, 2024).  Just as here, *Baurin* addressed whether a later-filed, later-expiring patent was a proper reference for invalidating an earlier-filed, earlier-expiring patent claim under ODP.  *Id.* at *3-4.  But, unlike here, *Baurin* held that it was not. *Id.* at *5.  Acknowledging that these facts are "somewhat different" than in *Allergan*, *Baurin* applied the "reasoning" from *Allergan* to conclude that the earlier-filed, earlier-expiring patent claim did "not extend a period of exclusivity on the claimed subject matter," and thus did not present a risk of an unjustified timewise extension.  *Id.*  As a result, the "purpose" of ODP demanded that the later-filed, later-expiring patent could not "serve as [a] reference against" those earlier-field, earlier-expiring claims.  *Id.* at *4-5.

In the decision on appeal here, the Board acknowledged *Baurin* but diverged because *Baurin* was "not currently a precedential Board

12

decision." Appx18. Since that time, the Board has denied rehearing on *Baurin,* and USPTO Director Squires has convened an ARP to *sua sponte* rehear the decision and consider, *inter alia,* the impact of *Allergan* in cases like these. *Supra* 2.

**C.    *Allergan* encourages innovation; the Board's decision punishes it.**

The Board's misapplication of ODP disincentivizes the development of follow-on technologies and is out of sync with how modern-day innovation progresses. Modern research and development, for all sectors of technology, is inherently iterative. As this Court recognized in *Allergan,* "it is not atypical for a patent applicant to first seek to protect the most valuable inventive asset (*e.g.*, a pharmaceutical genus claim) before filing continuing applications on enhancements or modifications to that inventive asset (*e.g.*, a particular compound in that genus, a method of using the compounds of that genus, etc.)." 111 F.4th at 1371. That is precisely how the patent system is designed to function: a company invests heavily in early-stage research, patents its foundational discovery, and then continues to invest in follow-on research that refines the science by identifying specific species within a broader initial invention, developing new methods of use, and exploring

13

related therapeutic applications.  Each successive discovery may warrant its own patent application, filed with a later priority date.

This foundational-to-specific or genus-to-species development pattern is not gamesmanship.  It is the natural and expected progression of scientific research.  The patent system encourages this progression by rewarding each stage of investment with patent protection.  But the Board's approach turns this incentive structure on its head.  If patenting improvements on prior inventions could retroactively invalidate earlier patents covering foundational technologies, patent holders face a perverse choice: continue innovating and risk destabilizing their existing portfolio or stop innovating to protect the status quo.  That outcome is antithetical to the purpose of the patent system: encouraging the disclosure of inventions for the public's benefit.  *Supra* 6-7.

The chilling effect extends beyond a single company's portfolio.  In modern research and development, collaboration between companies, universities, and research institutions is commonplace.  Joint inventorship is a routine feature of such collaboration.  Under the Board's approach, a company might hesitate to engage in collaborative

14

research if the collaborator's later-filed patents—over which the company has no control—could create ODP problems for the company's hard-earned patents from their previous collaborative efforts. Similarly, companies seeking to pay for the use of an innovator's technology might become reluctant to license or acquire patents if the seller could subsequently obtain a later-filed patent that invalidates the licensed or purchased patent. Patents are not fungible goods; their value depends on their enforceability. If that enforceability is contingent on the unpredictable future actions outside the control of the buyer, the entire market for patent transactions suffers.

## II. Anti-Harassment Rationale Cannot Be A Standalone Basis For ODP.

ODP analysis—and, in particular, the determination of whether a patent is a proper reference patent for ODP—is driven by ODP's fundamental purpose: to prevent patentees from obtaining a second patent on a patentably indistinct invention to effectively extend the life of a first patent to that subject matter. *Supra* 7-10. The Board, however, relied solely on a different justification for ODP, acknowledged by this Court in a different context, to reach its erroneous ODP conclusion. In particular, the Board found *In re Fallaux*, 564 F.3d 1313

15

(Fed. Cir. 2009), and the "second justification for obviousness-type double patenting—harassment by multiple assignees"—to be "binding" on whether later-filed, later-expiring patents can serve as references for earlier-filed, earlier-expiring patents.  Appx9.  Not so.

The issue in *Fallaux* was not whether later-filed, later-expiring claims were proper references.  Rather, the appellant challenged only whether the examiner applied the proper test (a one-way test versus a two-way test) for evaluating ODP.  564 F.3d at 1315.  In dicta, *Fallaux* referenced "a second justification for" ODP: "harassment by multiple assignees."  *Id.* at 1319.  But *Fallaux* did not hold that the anti-harassment rationale could serve as an independent basis for ODP.  No court has.  That ODP may have "second" or subsidiary goals does not mean that separate ownership, on its own, should serve as a standalone basis for ODP.  *See id.*; *In re Hubbell*, 709 F.3d 1140, 1145 (Fed. Cir. 2013) ("The *second* rationale [for ODP] is to prevent multiple infringement suits by different assignees." (emphasis added)).

No court has relied on the theoretical possibility of harassment as a standalone basis for making an ODP rejection, much less a basis for invalidating patents based on improper ODP references.  To the

16

contrary, this Court's predecessor court repeatedly rejected ODP arguments based on the threat of "possible harassment by multiple assignees." *Application of Robeson*, 331 F.2d 610, 615 (C.C.P.A. 1964); *Application of Jentoft*, 392 F.2d 633, 641 (C.C.P.A. 1968). The Court of Customs and Patent Appeals noted that it did "not see the courts bogged down with harassment suits," and in the "rare instances where there is a situation which a court can be persuaded amounts to harassment," courts could "deal[] with it by inflicting … attorney's fees." *Jentoft*, 392 F.2d at 641. That is as true today as it was then. There remains other "powerful deterrent[s]," such as attorney's fees and sanctions, to reduce any hypothetical risk of harassment by multiple assignees. *Id.*

## III. The Board's Approach Creates Unprecedented Unpredictability And Destabilizes The Patent System.

The Supreme Court has cautioned against "changes that disrupt the settled expectations of the inventing community." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 739 (2002). And USPTO leadership has emphasized avoiding disruption of the settled expectations of patent owners facing PTAB challenges. *See* Coke Morgan Stewart, Memorandum re *Interim Processes for PTAB*

*Workload Management* 2 (Mar. 26, 2025), https://perma.cc/UC4U-XHQY. It is hard to envision an ODP rule that would upset the settled expectations of patent owners more than that at issue here.

Indeed, already, the Board has split in its approach to ODP, causing such disruption. While the Board here affirmed the rejection of claims for ODP later-filed, later-expiring patents, this decision explicitly split from the earlier *Ex parte Baurin*, which reached the opposite conclusion on nearly identical facts. *Supra* 11-12. This inconsistency is highly disruptive of patent owners' settled expectations, making this Court's clear and unequivocal intervention all the more important.

The Board's approach creates a backwards-looking ODP problem that is entirely unprecedented. Today, patent holders understand their risk profile at the time of filing: they know when they are filing a continuation or obvious variant of an earlier-filed patent, they can expect that an ODP rejection may occur, and they can take appropriate steps by filing a terminal disclaimer. But under the Board's approach here, the mere act of continuing to innovate by filing new patent applications that stand on their own could retroactively threaten the validity of a patent holder's *existing* patents. A backwards-looking ODP

18

rule creates a massive predictability problem and does not allow applicants to make straightforward, logical decisions regarding their patent portfolios.

The Board's proposed solution that the parties could resolve the rejection at hand by filing a terminal disclaimer is no true recourse. Appx15.  Where the application under examination would expire before the reference patent, there is no extended patent term to truncate: a terminal disclaimer in such a scenario would not actually disclaim any patent term, it would merely impose common ownership.  And in many scenarios, such filing is impossible.  ODP can apply between patents with a common inventor even if they are not commonly owned, yet a terminal disclaimer is unavailable when patents are not commonly owned.  *Hubbell*, 709 F.3d at 1146; *see also Fallaux*, 564 F.3d at 1319. This creates a trap: a later-expiring patent by a co-inventor at a different company could potentially invalidate an earlier patent, and the earlier patent holder would have no mechanism to cure the defect. *See supra* 14-15.

The consequences for investment decisions are stark.  Companies invest billions of dollars in research and development on the strength of

19

the patent protection they expect to receive. If later-filed patents can invalidate earlier-filed ones, the value of every patent in a portfolio becomes contingent on what the patent holder (or a co-inventor) might file in the future. Patent holders would not be able to accurately value their portfolios, which could result in lower valuations, reduced willingness to invest in innovation, and reluctance to enforce patent rights for fear that the very patents being asserted could be challenged based on ODP over patents that did not even exist when the earlier patents were filed.

## CONCLUSION

The Court should reverse the Board's affirmance of the examiner's rejections.

Respectfully submitted,

Clement S. Roberts
ORRICK, HERRINGTON &
   SUTCLIFFE LLP
405 Howard Street
San Francisco, CA 94105
(415) 773-5700

*/s/ Irena Royzman*

Irena Royzman
Samantha M. Leff
ORRICK, HERRINGTON &
   SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019
(212) 506-5000

Dana Sublett
ORRICK, HERRINGTON &
   SUTCLIFFE LLP
2100 Pennsylvania Ave. NW
Washington, DC 20037
(202) 339-8400

*Counsel for Amici Curiae*

May 1, 2026

21

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. Cir. R. 29(b) because this brief contains 3543 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b)(2).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Century Schoolbook 14-point font.

ORRICK, HERRINGTON & SUTCLIFFE LLP

*/s/Irena Royzman*

Irena Royzman
*Counsel for Amici Curiae*